J-S41045-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA

        Appellee                     :

                                          :

                 v.                        :

                                          :

SCOTT MICHAEL KIRCHNER, II,           :

                                          :

        Appellant                   :         No. 422 MDA 2020

Appeal from the PCRA Order Entered February 3, 2020
in the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001970-2017

BEFORE:     KUNSELMAN, J., McLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY KUNSELMAN, J.:              **FILED MAY 17, 2021**

      Scott Michael Kirchner, II appeals from the February 3, 2020 order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

      We derive the following facts from the record. Kirchner's charges stem from a home invasion resulting in the death of Joseph Blanco and injury to his wife, Trudy Blanco, and Trudy's sister, Tracey Kline.

      In the early morning hours of September 25, 2017, Kirchner was at the home of Takia Pugh, along with co-defendant Charles Holloway. Kirchner and the two others were using illicit drugs. After an argument ensued, Pugh "kicked" Kirchner and Holloway out of her house. N.T., 9/25/2018, at 226. Kirchner and Holloway left on foot with Holloway following Kirchner. Kirchner stopped at an apartment building, where he changed into black clothing while

---

* Retired Senior Judge assigned to the Superior Court.

Holloway waited outside.  Next, Kirchner and Holloway continued walking until they reached the Blancos' home.  The Blancos lived in a residential, single-family home along with their adult son Corey Blanco, Corey's five-year old son, and Kline.  Corey sold prescription opioid pain pills that had been prescribed to him, in addition to pills prescribed to his parents that he had stolen from them.  His initially small operation grew fairly quickly.  He started also selling other illicit drugs, and eventually people Corey did not know started to show up outside the house to buy various drugs.

At about 3:50 a.m. on September 25, 2017, Kirchner kicked in the side door of the Blancos' home.  Joseph, Trudy, and their grandson were sleeping in the same bed together in a second-floor bedroom when Trudy was awakened by a lamp falling on her.  She saw a man, later identified as Kirchner, holding a gun and standing at the side of her bed asking, "[W]here is the money? Where is the medication? Where is the medicine?" *Id.* at 51.  After responding that she did not have either and did not know what Kirchner was talking about, Kirchner went around to her husband Joseph's side of the bed and also demanded medication and money.  After he responded the same way as Trudy, Kirchner began to rummage through their belongings in the bedroom.  Kirchner next moved toward the bedroom door, turned around, and shot Trudy in the hip.  Joseph came around the bed, standing in front of Trudy.  Kirchner shot Joseph three times in the left chest, killing him.  Kirchner went

downstairs and Trudy immediately called 911. The Blancos' young grandson was in the second-floor bedroom during this incident.

Meanwhile, Kline had been awakened in her first-floor bedroom by a loud noise. Using her cellular phone to view the surveillance system in the home, she could see a smaller, thin man dressed in black, later identified as Kirchner, standing in the doorway of the first floor. She immediately called 911. Kline heard Kirchner run upstairs and a short time later, she heard gunfire. Shortly after, Kirchner came downstairs and entered her bedroom. Kline remained on the line with 911, but hid her phone under her pillow to conceal it from Kirchner. Upon entering Kline's room, Kirchner put a gun to her head, and yelled "[W]here is the money, where is the drugs[?]" *Id.* at 35. When Kline stated she did not have either, Kirchner struck Kline in the face with the gun, causing her to bleed. Kirchner rummaged through Kline's belongings in the bedroom and then returned upstairs. Kirchner next returned to Kline's bedroom, where he put the gun to her head again, saying she was "going to get a bullet in [her] head if [she didn't] give [him] the drugs and the money." *Id.* at 37. Kirchner left Kline and she heard him run upstairs again.

Sergeant Bret Fisher, who was in the area, was dispatched to the scene. He first approached the front door, which was locked. From a first-floor window at the front of the house, he could hear a male voice yelling inside, asking where the pills are kept. He then radioed for assistance and went to the side of the house. He observed the side door, which had been kicked in

- 3 -

and had a broken door jam. Sergeant Fisher then encountered Holloway walking out of the side door of the house and took him into custody; Holloway was compliant and did not have a gun in his possession. Upon searching the home,[1] police discovered a wide-open window in the second-floor bathroom, which faced the rear of the home. Immediately after the incident, Kirchner was observed on video surveillance running from an alley behind the house. Kirchner was apprehended the next day at Pugh's house.

Based on the foregoing, Kirchner was charged with 16 offenses: criminal homicide, three counts of robbery, three counts of aggravated assault, one count of burglary, and eight counts of criminal conspiracy.[2] During a three-day trial held on September 25-27, 2018, the Commonwealth presented, consistent with the foregoing factual account, the testimony of 17 witnesses and, *inter alia*, video surveillance recordings, audio recordings, text messages, photographs, drugs, and clothing. The parties also entered into five factual

---

[1] Corey was sleeping in his third-floor bedroom that night, along with his fiancée and two friends. Corey's friend awoke to a loud noise downstairs, so the friend woke up Corey. Corey went to the top of the stairs on the third floor to investigate when he heard gunshots. He also heard a male voice yelling. Upon hearing the shots, Corey gathered his fiancée and friends and had them get in a closet on the third floor. Corey remained on the third floor of the house until police arrived. Police removed Corey, his fiancée, and friends from the home.

[2] 18 Pa.C.S.A. §§ 2501(a); 3701(a)(1)(i), (iii), and (iv); 2702(a)(i), (iv); 3502(a)(1)(i), and 903, respectively.

- 4 -

stipulations relating to laboratory reports and Joseph's autopsy. The jury found Kirchner guilty of first-degree murder, three counts of robbery, three counts of aggravated assault, one count of burglary, and four counts of criminal conspiracy, but not guilty of the remaining four counts of criminal conspiracy. On November 21, 2018, Kirchner was sentenced to an aggregate term of life without parole (LWOP).[3] Kirchner did not seek post-sentence relief or file a direct appeal.

On March 7, 2019, Kirchner filed *pro se* a timely PCRA petition seeking to have his appellate rights restored *nunc pro tunc*. PCRA counsel was appointed and Kirchner was granted leave to file two amended petitions averring additional claims of ineffective assistance of trial counsel. The PCRA court held hearings on June 11 and September 30, 2019, at which Kirchner and his trial counsel testified. The Commonwealth presented audio recordings from a jail visit between Kirchner and his family members that took place during the evening of his first day of trial and related to Kirchner's satisfaction

---

[3] Specifically, Kirchner was sentenced to a term of life without parole for first-degree murder, to run consecutively to a term of incarceration of 10 to 20 years each for the robbery and aggravated assault convictions related to Kline. Five of the counts merged for sentencing, and the remaining sentences were run concurrently to the term of LWOP.

with trial counsel.[4]  The PCRA court denied Kirchner's petition on February 3, 2020.

This timely-filed appeal followed.[5]  On appeal, Kirchner argues that the PCRA court erred in dismissing his ineffective assistance of counsel claims. Specifically, Kirchner argues trial counsel was ineffective for failing to: (1) file a direct appeal; (2) call two witnesses; (3) object to a reference in the Commonwealth's closing argument to Kirchner's wearing of gloves; (4) provide Kirchner with copies of certain discovery prior to trial; (5) cross-examine properly Kirchner's co-defendant Holloway; and (6) obtain an FBI analysis of a voice heard on the 911 call and Kirchner's cellular phone location data.  Kirchner's Brief at 4-6 (combined and reordered for ease of disposition).

We review Kirchner's claims mindful of the following.

> In reviewing the propriety of the PCRA court's denial of a petition for relief, we are limited to determining whether the record supports the court's findings, and whether the order is otherwise free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for

---

[4] Neither the disk nor transcript of the audio recordings admitted at the September 30, 2019 hearing was transmitted to this Court as part of the certified record or the notes of testimony.  "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty."  *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006).  For the reasons that follow, this omission does not hamper our review.

[5] Kirchner complied with Pa.R.A.P. 1925(b). In lieu of a Pa.R.A.P. 1925(a) opinion, the PCRA court referred us to its February 3, 2020 opinion denying Kirchner's petition.

those findings. We give no such deference, however, to the court's legal conclusions.

The law presumes counsel has rendered effective assistance. An evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. When asserting a claim of ineffective assistance of counsel, [an appellant] is required to make the following showing: (1) that the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1012-13 (Pa. Super. 2016)

(citations and quotation marks omitted).

**Failure to file direct appeal**

Kirchner first argues he "was denied his constitutionally-guaranteed right to effective representation when trial counsel failed to file an appeal on [his] behalf." Kirchner's Brief at 9.

Our Supreme Court has held that where "there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal cases" and denies the accused the assistance of counsel that is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v Lantzy*, [] 736 A.2d 564, 572 (Pa. 1999). Such an oversight constitutes prejudice and *per se* ineffectiveness under the PCRA. *Id.* However, "[b]efore a court will find ineffectiveness of trial counsel for failing to file a direct appeal,[an appellant] must prove that he requested an appeal and that counsel disregarded this request." *Commonwealth v. Touw*, 781 A.2d 1250, 1254 (Pa. Super. 2001).

*Commonwealth v. Mojica*, 242 A.3d 949, 955 (Pa. Super. 2020) (emphasis omitted).

Instantly, Kirchner and trial counsel presented differing accounts regarding this claim at the PCRA hearing. Kirchner testified that he had requested trial counsel to file a direct appeal on his behalf, while trial counsel testified that he had discussed filing an appeal with Kirchner, but they together decided against it because counsel did not believe Kirchner had any basis upon which to file a direct appeal. Kirchner testified as follows.

> [PCRA COUNSEL:]        … Can you please tell the Court what type of discussions you had, whether they were written or oral, and when you had those discussions with your attorney.
>
> [KIRCHNER:]     Yes. It was exactly one day before I got sentenced. I told him that I would like him to file a direct appeal. He says - - he refused to file a direct appeal because he believed there's no merit to my case.
>
> ***
>
> [PCRA COUNSEL:]      Where did you have this discussion with [trial counsel]?
>
> [KIRCHNER:]     In the Lebanon County Correctional Facility visiting room on the phones.
>
> ***
>
> [PCRA COUNSEL:]      What did you specifically tell [trial counsel] about wanting to appeal?
>
> [KIRCHNER:]     I think that the evidence was insufficient enough for a conviction. I think there was a lack of, you know, evidence for the proceeding to take place the way it did. I wanted it to be appealed. He told me that I have no merit for my claims.

[PCRA COUNSEL:]      After he told you that, that he does not believe you have merit for your claim, did you say, okay, I don't want you to appeal it anymore, or did you tell him something different?

[KIRCHNER:]      No. I told him I still wanted to appeal it. He said, well, I'm not going to appeal it. Down the road you can get a - - take an appointed counsel for a PCRA petition. So I went upstate and had to file a PCRA petition myself because I was already time barred to file an appeal.

N.T., 6/11/2019, at 5-6.

In contrast, trial counsel testified as follows.

[DISTRCT ATTORNEY (D.A.):]      Prior to the sentencing of [Kirchner], did the two of you discuss whether an appeal would or would not be filed in this case?

[TRIAL COUNSEL:]      Yes, generally.

[D.A.:]      What was the discussion you had with [Kirchner] as it relates to a direct appeal?

[TRIAL COUNSEL:]      My recollection is actually inconsistent with his. I did go out prior to his sentencing. The purpose was to discuss the sentencing with him, and generally what his appeal rights were afterwards. You know, I explained to him generally again the time within which he would have to file those rights, and that while he had a right to appeal, the question was whether there were issues. I didn't see any issues based on our objections or anything that was made during trial, you know, that necessitated that.

I explained to him what the process was for a PCRA, and things that he may want to discuss with PCRA counsel down the road about that, and that after the sentencing occurred at some point in the future, I would send him a letter regarding our discussion and attempting to facilitate the process so that he could obtain court-appointed counsel and that I could transition and provide the records to that counsel.

[D.A.:] So you would have discussed with him your belief that there were no direct appeal issues that you believe had merit at that point in time.

[TRIAL COUNSEL:] That's correct.

[D.A.:] During those discussions did he seem onboard with your analysis and what you had suggested what the best way to approach this?

[TRIAL COUNSEL:] Yeah. That was my recollection. I don't recall him directing me to ever file anything regarding an appeal.

[D.A.:] If [Kirchner] had requested you to file an appeal, regardless of the issues or that you thought there was no merit, would you have filed one?

[TRIAL COUNSEL:] Yeah. If he directed me to file an appeal, yes.

[D.A.:] His testimony this morning was that he told you he wanted to file an appeal regardless. Do you recall hearing that?

[TRIAL COUNSEL:] Yeah. I don't recall that being our conversation.

[D.A.:] If that was his wish you would have filed the appeal to follow that wish?

[TRIAL COUNSEL:] Correct.

[D.A.:] Have you had other cases where you represented individuals and you thought there was no merit for appeal, but they wanted an appeal regardless?

[TRIAL COUNSEL:] Yes. I have had issues where in the last minute individuals, who have briefly communicated with me an interest in filing an appeal that wasn't previously communicated to me, and I filed that appeal.

[D.A.:] So even after your discussions when [Kirchner] had reached out to you and said he changed his mind, would you have filed an appeal?

[TRIAL COUNSEL:]    Yes.

[D.A.:]    Did [Kirchner] communicate anything to you at sentencing that made you believe that he had changed his mind?

[TRIAL COUNSEL:]    No.

[D.A.:]    Did [Kirchner] indicate anything after sentencing that made you believe he had changed his mind on the appeal?

[TRIAL COUNSEL:]    He never directly communicated with me at any point.

*Id.* at 35-38.

Faced with this conflicting testimony, the PCRA court credited trial counsel's testimony instead of Kirchner's testimony. *See* PCRA Court Opinion, 2/3/2020, at 7 (stating the PCRA court found trial counsel's testimony "internally consistent and credible"); see *also id.* at 6-7 (referring to trial counsel's testimony as credible). Kirchner's argument amounts to an unsupported assertion that we should disregard the credibility determinations of the PCRA court. *See* Kirchner's Brief at 9-10. "However, we are bound by the credibility determinations of the PCRA court, particularly where, as here, those findings are supported by the record." *Mojica,* 242 A.3d at 956 (citation omitted). Accordingly, Kirchner is not entitled to relief on this claim because he has failed to "prove that he requested an appeal and that counsel disregarded this request." *See id.*, *quoting* *Touw,* 781 A.2d at 1254.

**Failure to call witnesses**

- 11 -

Kirchner next claims trial counsel was ineffective for failing to present the testimony of his paramour, Kiyayla Rodriguez, and an unnamed homeowner or landlord of a property located near the crime scene. Kirchner's Brief at 17-20, 23-26. With respect to Rodriguez, he maintains her testimony would have provided an alibi by showing "that he was home with his paramour and children on the evening of this incident and therefore not present at the scene." *Id.* at 18. As to the homeowner/landlord, Kirchner claims that had this witness testified, "the jury would have known the truth, that [Kirchner] did not commit this crime, and therefore, did not enter [the homeowner/landlord's] property to change his clothing since he had no reason for doing so." *Id.* at 25. While not entirely clear, it appears Kirchner is claiming his co-defendant Holloway lied to police when he told them Kirchner had gone to this unnamed witness's property to change his clothing and possibly obtain a gun. N.T., 6/11/2019, at 17. Kirchner argues that had trial counsel called this witness, he or she would have undermined Holloway's credibility. Kirchner's Brief at 25.

Regarding an ineffectiveness claim for failure to call a witness, we have stated the following.

> It is axiomatic that when a PCRA petitioner claims counsel was ineffective for failing to call a witness, he or she must establish (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the

- 12 -

witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Goodmond**, 190 A.3d 1197, 1202 (Pa. Super. 2018) (citation and internal quotation marks omitted).

With respect to Rodriguez, the PCRA court denied Kirchner's claim because he failed to prove she was available and willing to testify on his behalf. PCRA Court Opinion, 2/3/2020, at 16-17. In denying the claim as to the homeowner/landlord witness, the PCRA court reasoned that Kirchner had not only failed to identify the name of the witness to trial counsel, but also failed to prove he or she existed, was available, and was willing to testify on his behalf. **Id.** at 18.

Upon review, we agree with the PCRA court that Kirchner did not meet his burden with respect to his ineffectiveness claims for failure to call witnesses.

The record confirms that while Kirchner attempted to call Rodriguez as a witness at the PCRA hearing, and the PCRA court continued the hearing in order to allow Rodriguez to testify, she failed to appear. N.T., 6/11/2019, at 34; N.T., 9/30/2019 at 3-4, 9-10. Thus, Kirchner failed to prove her availability and willingness to testify on his behalf at trial. **See Goodmond**, 190 A.3d at 1202. Further, trial counsel testified at the PCRA hearing that he had discussed with Kirchner the possibility of calling Rodriguez as an alibi witness, but decided against it because Rodriguez's testimony would have

been inconsistent with Kirchner's video statements to police that he had been "out walking around that night" and text message evidence indicating Kirchner was not at home with Rodriguez that night. N.T., 6/11/2019, at 47, 49. Trial counsel explained he believed Kirchner would "lose credibility with the jury" if he presented Rodriguez's testimony in contradiction to the video statement and text message evidence. *Id.* at 49-50. Trial counsel also testified that he and Kirchner "were on the same page" with the decision not to call Rodriguez. *Id.* at 48.

With respect to the unnamed homeowner/landlord witness, the record shows Kirchner failed to establish any of the required elements to prove this claim. Kirchner never provided the identity of this purported witness to trial counsel or presented any evidence at the PCRA hearing as to the witness's existence, availability, or willingness to testify on his behalf at trial. *Id.* at 29; *see Goodmond*, 190 A.3d at 12. Accordingly, no relief is due on Kirchner's failure-to-call-witnesses claims.

**Failure to object to prosecutor's closing argument**

Kirchner next argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument pertaining to Kirchner's wearing gloves. Kirchner's Brief at 11. According to Kirchner, at trial "there was never any information testified to and/or presented that provided the fact regarding the perpetrator, or anyone, was wearing gloves." *Id.* at 12. He argues he was prejudiced because trial counsel's failure to object "allowed the

Commonwealth to essentially prove [its] point as to why [Kirchner]'s DNA was not present at the scene." *Id.* at 13.

Preliminary, we observe that Kirchner has failed to cite to where in the record the prosecutor made such a statement. Further, the only case law set forth in his brief references general PCRA standards and requirements to establish ineffective assistance of counsel. *See id.* at 12-13. Kirchner's brief cites to his testimony at the PCRA hearing, but a review of thereof shows no reference to where in the record the prosecutor referenced gloves. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citation omitted). Because Kirchner has failed to develop and support this allegation of ineffectiveness by any citation to the record, we find it waived. *See id.*

Even if not waived, we find no basis to upset the PCRA court's finding that Kirchner was not entitled to PCRA relief on this claim.[6] Our review of the record reveals two instances where the prosecutor referenced Kirchner's wearing of gloves in his closing argument:

> [T]his is a family's worst nightmare. At home, in their own beds, sleeping in the middle of the night, woken up by a man dressed in all black, face covered, **gloves on**, shoving a gun in their faces saying where is [*sic*] the drugs?

---

[6] *See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis.").

- 15 -

***

Let's discuss how we've done that and how we have proven our case to you. First of all, uncontradicted. We know the assailant was a smaller man. All right. We know he was wearing all black. Trudy told you **he was wearing gloves**.

N.T., 9/27/2018, at 13, 16 (emphasis added).

The record confirms Trudy testified the assailant, who was later identified as Kirchner, was wearing gloves when he entered her bedroom.

[D.A.:]    Ma'am, you said when you looked up from laying in bed you saw this man standing over you with a gun. Was it dark in your room?

[TRUDY:]    It was. It was dark, but there was light from the streetlights outside.

[D.A.:]    So whatever light was coming through the window was from the streetlights outside?

[TRUDY:]    Yes.

[D.A.:]    What were you able to observe about this person, if anything?

[TRUDY:]    They were covered with a ski mask, sunglasses, long clothes and **gloves**.

N.T., 9/25/2018, at 55 (emphasis added).

Upon review, Kirchner's argument as to this claim is refuted by the record. Thus, even if not waived, Kirchner failed to meet his burden of establishing that the underlying claim had merit as there was no basis for trial counsel to object to the prosecutor's statement. No relief is due.

**Failure to provide discovery**

- 16 -

Kirchner next argues that trial counsel was ineffective for failing to provide Kirchner with copies of certain discovery prior to trial. Specifically, he claims trial counsel failed to provide him with a copy of "text messages from victim's cell phone, wiretap from prison recordings, and information regarding Alexy Torres-Figueroa"[7] prior to trial.[8] Kirchner's Brief, at 14. According to Kirchner, without copies of the text messages and wiretap recordings, "he was unable to make a decision to testify at trial to elaborate on" this evidence. *Id.* at 15. As to Torres-Figueroa, Kirchner claims "he did not know anything about" this Commonwealth witness until jury selection. *Id.* Without this discovery, Kirchner argues he was unable to defend himself properly. *Id.* at 15-16.

The PCRA court concluded, and the record confirms, that Kirchner failed to substantiate these claims during the PCRA evidentiary hearings. First, we agree with the PCRA court that Kirchner failed to demonstrate prejudice for his claim that trial counsel failed to provide him with text messages and wiretap recordings. PCRA Court Opinion, 2/3/2020, at 13-15. Kirchner claims

---

[7] Torres-Figueroa was a jailhouse informant who testified at trial that Kirchner admitted to Torres-Figueroa that he had committed the crime.

[8] Our review of the notes of testimony from the trial shows numerous exhibits admitted relating to Kirchner's and Holloway's phones, as well as multiple exhibits relating to recordings at the Lebanon County Correctional Facility. *See* N.T., 9/25/2018, at 5-6. Kirchner fails to identify with any specificity the text messages and wiretap recordings to which he refers.

he was prejudiced because he would have testified at trial had he been provided with this discovery. This claim fails because at the time Kirchner decided not to testify, the text message and wiretap evidence had already been presented at trial as part of the Commonwealth's case-in-chief. *See* N.T., 6/11/2019, at 27 (testimony from Kirchner confirming he knew about such evidence and testimony at the time he made his decision not to testify). Trial counsel's alleged failure to provide him with this discovery had no bearing on his decision to testify. *Id.* at 27-28 (Kirchner's responding affirmatively when asked, "That evidence [of, text messages and wiretap recordings] had nothing to do with whether or not you decided to testify or not testify; is that correct?"). Thus, Kirchner has failed to prove prejudice.

Next, with respect to trial counsel's not providing Kirchner with information about Commonwealth witness Torres-Figueroa, the record supports the PCRA court's finding that Kirchner failed to show trial counsel's action lacked a reasonable basis. PCRA Court Opinion, 2/3/2020, at 15. Trial counsel explained that this witness had not come forward until about two weeks before trial and counsel had discussed the witness's testimony with Kirchner in-person at the jail on the Saturday before trial. N.T., 6/11/2019, at 44-45. Trial counsel also recalled discussing with Kirchner on the day of jury selection a note written by this witness, which contained his "wish list" in exchange for his trial testimony; the note had been found by an investigator in the witness's jail cell. *Id.* at 45. Trial counsel described his strategy was

to cross-examine Torres-Figueroa at trial about the note in an attempt to show potential bias, which trial counsel in fact did. *Id.*; N.T., 9/26/2018, at 282, 287-88. The PCRA court found trial counsel's testimony credible. PCRA Court Opinion, 2/3/2020, at 15. Having determined counsel's actions were reasonable, the PCRA court concluded Kirchner's claim of ineffective assistance of counsel on this basis did not entitle him to relief. *Id.* We are bound by the PCRA court's credibility determinations, *Mojica,* 242 A.3d at 956, and based on our review, we conclude the PCRA court's conclusions are supported by the record.

**Failure to cross-examine properly co-defendant**

Kirchner next claims trial counsel was ineffective for failing to question co-defendant Holloway about gunshot residue on his hands. Kirchner's Brief at 20-23. According to Kirchner, "if the jury would have heard that line of questioning," Kirchner would not have been found guilty. *Id.* at 21.

"The examination and cross-examination of witnesses is a matter in the first instance clearly within the province of trial counsel." *Commonwealth v. Fulton*, 465 A.2d 650, 655 (Pa. Super. 1983). "Counsel cannot be held ineffective because he chose one reasonable course and not all possible lines of questioning." *Commonwealth v. Ly*, 599 A.2d 613, 618 (Pa. 1991).

The PCRA court determined trial counsel's strategy to not question Holloway about gunshot residue had a reasonable basis, pointing to lab report evidence admitted at trial which showed that Holloway did not have gunshot

residue on his hands. PCRA Court Opinion, 2/3/2020, at 17. The PCRA court found trial counsel "reasonably believed that there was no basis for believing that [] Holloway had residue on his hands and he and [Kirchner] had discussed this prior to trial. [Trial counsel] credibly testified that his trial strategy was to highlight the lack of evidence" against Kirchner. *Id.*

A review of the record confirms that the parties stipulated to the report prepared by the Pennsylvania State Police Crime Laboratory, which analyzed samples from Holloway's hands. N.T., 9/25/2018, at 234-35, Ex. 32, 33.[9] The parties stipulated that "the results indicate that there was no gunshot residue present on the hands of [] Holloway…." *Id.* at 235. Further, trial counsel testified at the PCRA hearing as follows: "[T]here was the report that was being introduced that, you know, was able to address that. I didn't see the point in allowing [Holloway] to provide an explanation or some open-ended line of questioning that we have zero control over where the stipulation was completely controlled and we were able to utilize that in a manner in which we want." N.T., 6/11/2019, at 66. We are bound by the PCRA court's credibility determinations, *Mojica,* 242 A.3d at 956, and find the PCRA court's conclusion supported by the record. No relief is due.

---

[9] The lab report is not contained in the certified record on appeal. As noted *supra*, it was Kirchner's responsibility to ensure the certified record is complete. *Preston*, 904 A.2d at 7. However, because the stipulation was read into the record, this omission does not hamper our review.

Kirchner also claims trial counsel was ineffective for failing to question Holloway about an alleged inconsistent statement. Kirchner's Brief at 26-27. Specifically, he claims trial counsel should have questioned Holloway "as to why he told the police that there was a lady in the front room who could state that he wasn't there if his claim was that he wasn't ever present and therefore [Holloway] wouldn't know if someone was in the front room or not." *Id.* According to Kirchner, he was prejudiced because "if trial counsel would have properly cross-examined [Holloway] so [as] to bring to light that he was indeed the one present in the home at the time of the crime[,]" the outcome of his case would have been different. *Id.* at 28.

Our review of the record shows that Holloway admitted at trial to being inside the Blancos' home at the time of the incident. Holloway testified that after Kirchner had already entered, Holloway "stepped into the house" through the "side door of the residence." N.T., 9/25/2018, at 165. Once inside, Holloway said he "started looking around, just being nosey" in the kitchen when he heard Kirchner asking for the location of drugs. *Id.* at 165-66. Holloway testified that he next heard gunshots and "left out of the kitchen," but when it "got quiet," he went back inside through the side door again. *Id.* at 166. Because Holloway admitted on direct examination to being inside the home, there is no merit to Kirchner's claim that the outcome of his case would have been different had trial counsel elicited the same testimony on cross-examination, *i.e.*, that Holloway was inside the home.

Further, the record reflects that on cross-examination, trial counsel successfully impeached Holloway by eliciting testimony in which he conceded that he had made several statements to police that contradicted his direct examination testimony. N.T., 9/25/2018, at 182-86. With respect to his entering the house, Holloway responded affirmatively when trial counsel asked, "When you were initially questioned by the police, you attempted to tell them that you never even entered the residence. Isn't that correct?" *Id.* at 183. Moreover, trial counsel also cross-examined Holloway about his cooperation with police and Holloway's admitted hope he would receive a "better plea deal" in his own criminal case. *Id.* at 186-89. Trial counsel testified at the PCRA hearing that this approach was an effort to undermine Holloway's credibility so he could argue during closing arguments that Holloway's testimony should be discredited by the jurors. N.T., 6/11/2019, at 54-56. Accordingly, this claim lacks merit because trial counsel did in fact cross-examine Holloway about whether he had entered the house. *See Commonwealth v. Chmiel*, 889 A.2d 501, 541 (Pa. 2005) ("Trial counsel cannot be found ineffective for failing to do something that he, in fact, did."). Moreover, we agree with the PCRA court that trial counsel's actions had a reasonable strategic basis of impeaching Holloway. *See* PCRA Court Opinion, 2/3/2020, at 19-20. No relief is due.

**Failure to investigate evidence**

Kirchner's final claim is that trial counsel was ineffective for failing "to retrieve a copy of the 911 call analysis as it related to [Kirchner]'s voice identification from recordings at the prison" and "to obtain a copy of [] [Kirchner]'s cell phone ping report which would prove that [Kirchner] was not at the scene of the crime." Kirchner's Brief at 30. Kirchner argues "trial counsel had no basis for his inaction" and "should have known to look into and request a copy of this voice analysis based on his knowledge and understanding of the law." *Id.* at 31. He argues he was prejudiced because "the jury couldn't hear the truth, that [Kirchner] did not commit this crime." *Id.*

With respect to the 911 call, the PCRA court provided the following analysis.

> Kirchner testified that he wanted his counsel to obtain the results from the FBI analysis of the 911 call recording that contained the voice of the perpetrator. He testified he never received those results. He found out from his discovery packet that analysis had not taken place. [N.T., 6/11/2019, at 20.] Kirchner acknowledged he did not obtain any such reports in his preparation for PCRA proceedings. He did not know if a report existed or what it would have said. [*Id.* at 30.]

> Trial counsel testified that there was no voice analysis that could be done by the FBI on that 911 recording. He testified that the lack of analysis was a helpful point in that no one could identify Kirchner as being on that recording. [*Id.* at 56.]

> Here, trial counsel credibly testified that the FBI was not able to analyze the recording, or to identify Kirchner's voice on it, which was helpful to Kirchner's defense. Trial counsel had

sufficient reasonable basis in not obtaining a report from the FBI to identify the voices on that recording because, as the record indicates, the FBI did not identify Kirchner as being the person whose voice appeared on that recording. Trial counsel's course of conduct was thus designed to effectuate Kirchner's interests, and therefore, trial counsel had the reasonable basis sufficient to overcome the ineffectiveness challenged. *See Commonwealth v. Miller*, 431 A.2d 233, 234-[35]. Therefore, Kirchner's argument is without merit because counsel had a reasonable basis for his actions.

PCRA Court Opinion, 2/3/2020, at 20 (name designations altered).

With respect to the phone records, the PCRA court explained as follows.

Kirchner also testified that he wanted counsel to present his phone records to show that he was not anywhere near the crime at the time it happened. Kirchner testified that he believed it would help his alibi defense. [N.T., 6/11/2019, at 20-21.] Kirchner did not have any such records at his PCRA hearing that would show he was nowhere near the scene of the crime. Yet he testified he claims that the records would have resulted in a different verdict. [*Id.* at 30-31.]

Trial counsel testified that the cell phone ping information is imprecise and would only indicate a general vicinity where the phone was located. Kirchner's own statements put him in the general area of the homicide. [*Id.* at 57.] Trial counsel concluded that presenting such evidence could do more harm than good. [*Id.* at 58.]

\*\*\*

Here, trial counsel acted with the purpose designed to effectuate his client's interests by not further highlighting the information about Kirchner's presence near the crime scene, which Kirchner had already discussed with police by admitting to the presence in the general area of the homicide. [*Id.* at 57.] Trial counsel credibly testified that the reason why he chose not to present any of the alleged phone information is because Kirchner's own statements to police already put him in the vicinity of the homicide. Therefore, under those facts, trial counsel had sufficient reasonable basis for his action.

PCRA Court Opinion, 2/3/2020, at 20-21 (name designations altered). Based on our review, we determine these findings are supported by the record. As such, we may not disturb the PCRA court's credibility determinations. ***Mojica,*** 242 A.3d at 956. We discern no error in the PCRA court's conclusion that trial counsel acted reasonably. Accordingly, no relief is due.

Based on the foregoing, the PCRA court did not err in denying Kirchner's PCRA petition.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2021